UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION - BAY CITY

IN RE:

| | |
|---|---|
| JERRY J. WAGNER<br>and SHANNON L. WAGNER,<br>Debtors.<br>_____/ | Case No. 17-20394-dob<br>Chapter 13 Proceeding<br>Hon. Daniel S. Opperman |

OPINION REGARDING CHAPTER 13 TRUSTEE'S
CONCURRENCE WITH DEBTORS' MOTION FOR ORDER TO SHOW CAUSE

The Debtors, Jerry and Shannon Wagner, claimed that a creditor, Wildfire Credit Union ("Wildfire"), violated the automatic stay by denying the use of their Debit Visa Card issued by Wildfire and by requiring the Debtors to talk to Wildfire about their recent Chapter 13 filing. The Chapter 13 Trustee and the United States Trustee concurred with the Motion for Order to Show Cause filed by the Debtors. Wildfire denied it took any inappropriate action, but subsequently resolved its differences with the Debtors and the United States Trustee. The Chapter 13 Trustee claims that he is entitled to damages for attorney fees and costs incurred by virtue of the actions of Wildfire. Wildfire denies that it is responsible for any such damages. For the reasons stated in this Opinion, the Court denies the relief requested by the Chapter 13 Trustee.

Findings of Fact

The Debtors had various accounts with Wildfire and had access to their accounts via a Debit Visa Card. The Debtors also borrowed money to purchase a 2000 Jeep Wrangler and secured that loan with the Jeep. Given their financial condition, the Debtors filed a Chapter 13 petition with this Court on March 3, 2017. In their Chapter 13 Plan, the Debtors proposed to pay Wildfire equal monthly payments of $156.03 as a Class Five creditor. As alleged by the Debtors in their Motion for Order to Show Cause, the following occurred:

1

9. The Plan provided that the debtors were to pay their vehicle loan to Wildfire Credit Union through the Trustee. The Credit Union automobile loan was not to be crammed down or altered in any way. The Plan provided that the loan was to be paid in full during the plan and prior to filing the bankruptcy, they were current on the loan.

10. The debtors did not have any other loans or debts through the Credit Union.

11. On March 22, 2017, approximately 12 days after the Plan was served and 19 days after the case was filed, Mrs. Wagner went to lunch with some co-workers and attempted to use her Credit Union Debit Visa Card. The transaction was declined, despite money being in the account. Mrs. Wagner had to borrow money from a co-worker for her lunch and suffered great embarrassment from this event.

12. Upon returning to work after her lunch, Mrs. Wagner sent a message through the Credit Union's secured messaging system. She received a response from "Kate" indicating that there was a temporary block on the card because the collections department wanted to know if she was reaffirming the loan. Mrs. Wagner was directed to call the collections department.

13. This unlawful demand was made by the Credit Union even though the Wagners had filed for Bankruptcy relief 19 days earlier and they were represented by counsel. Further, this freezing of the Wagners' debit card was made without any prior notice to the Wagners or their attorney.

14. Mrs. Wagner, desperate to unfreeze her account, called the Credit Union and was told by the collections agent that her account had been frozen by the Credit Union in order to make the Wagners contact the Credit Union so that they could discuss the Wagners' Plan.

15. At no time prior to this freezing of the account did the Credit Union or their attorney attempt to contact the Wagners' attorney to discuss the Wagners' Plan or their objections to the Plan.

16. The collection agent that Mrs. Wagner spoke to advised her that the Credit Union had frozen the account. The agent spoke with her manager and advised Mrs. Wagner that the manager suggested the Wagners "pressure" the trustee into allowing the loan to be paid outside of the plan.

17. The Wagners were not forced to pay the automobile loan inside their Plan but chose to do so in order to receive Bankruptcy Code protection for that loan.

18. Further, the collections agent Mrs. Wagner spoke with, told Mrs. Wagner that if they left the vehicle loan in the Plan, their loan would go delinquent and they would lose good standing at the Credit Union, despite the fact that the

2

Plan pays the automobile loan in full without modification.

19. The Credit Union did release the funds in the Wagners' account and reopen [sic] the debit card after this conversation, but did again advise the Wagners that they should pressure the Chapter 13 Trustee to allow the vehicle to be paid outside the plan.

20. The Wagners did not alter their Chapter 13 Plan in any way after this unlawful and abusive conversation with the collections agent at the Credit Union.

21. Everything appeared to be fine with the Wagners' accounts at the Credit Union until over a month later, on or about April 29, 2017 (a Saturday), when they went to use their debit card to purchase gasoline and once again their card was declined.

22. As before, the Wagners received no notice that their Debit Visa card or their account would be frozen once again.

23. On May 1, 2017, Mrs. Wagner received notice that a recurring charge with Amazon.com would not go through.

24. Curious as to what was going on with her debit card, Mrs. Wagner attempted to use the card at another credit union's surcharge free ATM and it would not work, the transaction was declined. She then went to Wildfire's ATM and it still would not work.

25. Mrs. Wagner went into the Credit Union on May 2, 2017, to a teller in order to withdraw money from the account, and was told that the account was frozen and she had to again discuss the account with the collections department before her account would be unfrozen.

26. The teller called "Dustin" in the Collections Department and the Credit Union eventually relented and released the funds to Mrs. Wagner; however, once again, Mrs. Wagner suffered great embarrassment and inconvenience from the Credit Union's unlawful actions.

27. This second account freezing and demand to make the Wagners speak with the collections manager occurred nearly two months after the Wagners filed for bankruptcy relief.

28. At no time during these events did the Credit Union attempt to contact the Wagners' attorney with their unfounded objections over the payment of the vehicle loan in the Plan, even though the Credit Union knew they were represented.

29. On July 20, 2017, Mrs. Wagner, curious about whether it would work,

3

attempted to use her debit card for a small purchase and once again it was declined, despite their being money in the account.

30. The Credit Union's freezing of the Wagners' account on these occasions in order to pressure the Wagners to alter their Chapter 13 Plan amount to a form of extortion – withholding the Wagners' funds until they comply with the Credit Union's demands and violate the prohibitions established by 18 U.S.C. §152.

31. Further, when the Wagners, through their attorney, attempted to contact the Credit Union's attorney to resolve this issue they received no relief or explanation.

32. Despite having received notice of the bankruptcy, and despite the Wagners being current on their existing loan, the Credit Union had frozen their account for no reason other than to harass the Wagners and to get them to alter their Chapter 13 Plan.

(ECF No. 18, ¶ 9-32)

As a result, the Debtors requested the following relief:

A. The Respondent to show cause why it should not be held in contempt for violating 11 U.S.C. §362 and 524.

B. The Respondent to pay Debtors' actual damages, including costs and attorney fees associated with bringing the Motion for an Order to Show Cause, pursuant to the inherent contempt power of the Court under 11 U.S.C. §105(a).

C. The Respondent to pay Debtors' costs and attorney fees pursuant to 11 U.S.C. §362(k) and 11 U.S.C. §105(a).

D. The Respondent to pay Debtors $1,000.00 in sanctions for each willful violation of the automatic stay, pursuant to 11 U.S.C. §362(k).

E. Any and all other relief deemed equitable, just, and proper.

(ECF No. 18, ¶ A-E)

In response, Wildfire generally denied the allegations of the Debtors and requested that the Court deny the relief and award attorney fees to Wildfire for defending the Motion.

A few days after the response of Wildfire, both the United States Trustee and the Chapter

4

13 Trustee filed papers with the Court. The United States Trustee in particular raised the following concerns in his pleading:

> 3. The United States Trustee files this Statement under 11 U.S.C. § 307, which allows him to raise, appear, and be heard on any issue in any case or proceeding under the Bankruptcy Code, with the only exception that the United States Trustee may not file a proposed plan in a Chapter 11 case. 11 U.S.C. § 307.
>
> 4. The United States Trustee is concerned about the facts and admissions that gave rise to this motion. It appears that creditor Wildfire Credit Union ("Wildfire") has admitted to facts that constitute a knowing and intentional violation of the automatic stay by Wildfire under Section 362(k) on at least one occasion - the events around March 22, 2017.
>
> 5. It also appears that Wildfire committed additional knowing and intentional violations of the automatic stay on subsequent occasions, including the events of April 29, 2017, May 1, 2017, and July 20, 2017 outlined by the Debtors in their pleadings.
>
>     a. As opposed to the events surrounding the March 22, 2017 incident, Wildfire does not admit the underlying fact that the debit card was declined on the subsequent alleged dates, but rather neither admits nor denies for lack of information.
>
>     b. It is unclear why Wildfire can neither admit nor deny whether they denied transactions attempting to use the debit card on the dates alleged by the Debtors. Presumably, Wildfire has access to that information if they checked their internal systems, but for some reason has not admitted or denied that simple fact with respect to the dates in question.
>
>     c. It is further concerning that, even as late as September 20, 2017 – the day prior to this statement being filed, and over three weeks after Wildfire filed their response [Doc. No. 19] – *there is still a hold on the Debtors' bank account*. The Debtors attempted to debit $2.20 from their account at 4:47 p.m. on that date, and had enough money in the account to cover the debit. As can be seen from the receipt attached as **Exhibit 1**, the debit was declined. ***There is still a post-confirmation freeze on the Debtors' bank account in violation of the automatic stay.***

(ECF No. 23, ¶ 3-5)

The Chapter 13 Trustee, however, made a much shorter statement:

> NOW COMES the Chapter 13 Trustee, by and through his attorney, Marilyn

5

Adamczyk, and hereby appears and concurs with the Motion for Contempt Sanction for Violation of the Automatic Stay Pursuant to 11 U.S.C. §362(a)(1) and 11 U.S.C. §362(k) filed by Debtors Counsel as certain of the allegations contained therein impact the Chapter 13 Trustee's office and the local Chapter 13 system.

(ECF No. 22)

The Court opened discovery regarding all matters raised by the parties and conducted status conferences while the parties engaged in discovery and negotiated various resolutions. As a result, Wildfire was able to reach a resolution with the United States Trustee and with the Debtors. Specifically, as to the United States Trustee:

9. Without making any admissions, Wildfire agrees to cease and desist the enforcement of the ATM Card Policy[1]. Specifically, Wildfire agrees to cease and [desist] the shutting off of ATM or debit card access for Wildfire account holders who file petitions under the U.S. Bankruptcy Code, unless other cause to do so as described below exists. Wildfire further agrees to institute policies and procedures to ensure compliance with this Court Order.

10. The U.S. Trustee acknowledges that this order is not intended by the Parties to preclude or infringe upon Wildfire's rights to shut off ATM or debit card access for account holders under all circumstances otherwise allowed by law or regulation, or pursuant to a "Member in Good Standing" policy which would include the termination of the account relationship with the Debtor. Rather, the intent of the Parties was simply for Wildfire to cease and desist the shutting off of ATM and debit card access for account holders without consideration of whether a bankruptcy was filed. For instance, such understood circumstances would include the termination of the account relationship with the Debtor, even if the Debtor was in bankruptcy, if the debtor caused Wildfire to incur a loss as a result of the Debtor's conduct or the Debtor's proposed resolution of their bankruptcy proceedings. The Parties do not intend to herein name all such acceptable circumstances, but rather leave them as already existing in applicable law or regulation.

11. In return, the U.S. Trustee agrees and warrants that these policy changes by

---

[1] This Policy was described by the parties as follows: "Prior to the filing of the bankruptcy case at issue, the Credit Union utilized a core processing program which disabled ATM cards whenever a loan obligation in which the payments were thirty (30) days or more delinquent, which would cause the account holder's ATM card to cease to function – either at ATM withdrawals or on debit card transactions with merchant vendors ("the ATM Card Policy").

6

> Wildfire will resolve any arguments the U.S. Trustee could bring regarding violations of the automatic stay for any of the conduct described above engaged in by Wildfire prior to the entry of this Order.
>
> 12. Specifically, the U.S. Trustee agrees that this Order resolves any issues regarding intentional violation(s) of the automatic stay under 11 U.S.C. § 362 by Wildfire for any conduct described above engaged in by Wildfire prior to the entry of this Order.
>
> 13. Wildfire acknowledges that this Order does not preclude any individual debtor(s) from potentially seeking damages under 11 U.S.C. § 362 for intentional or unintentional violations of the automatic stay based on the conduct described above.

(ECF No. 49, ¶ 9-13)

As to the Debtors, Wildfire agreed to pay the Debtors $3,000.00 and pay their attorney $3,100.00 for fees incurred by the Debtors. As a result, the only remaining party in interest was the Chapter 13 Trustee.

Although the Chapter 13 Trustee was interested and concerned about the allegations regarding the Debit Visa Card, his concerns were broader. Specifically, the Chapter 13 Trustee pursued the allegations that Wildfire attempted to pressure the Debtors in either paying the Jeep loan outside of the Chapter 13 Plan or perhaps convince the Debtors to convert to Chapter 7 and then reaffirm their obligation with Wildfire. Accordingly, the Chapter 13 Trustee deposed various employees of Wildfire, but was unable to confirm the allegations made by the Debtors in their Motion. Subsequently, the Court was informed that the Chapter 13 Trustee requested attorney fees incurred by him in pursuing this matter. Wildfire denies that the Chapter 13 Trustee is entitled to any fees, and this Court heard oral argument on this issue on August 10, 2018. After consideration of the briefs and oral argument, the Court took this matter under advisement.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334,

and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

Applicable Law

11 U.S.C. § 105(a)

>   (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 362(k)

>   (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
>   (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

Analysis

The Chapter 13 Trustee seeks to have this Court exercise its contempt power under Federal Rules of Bankruptcy Procedure 9014 and 9020, which also arise out of Section 105. This power has been recognized by the Sixth Circuit Court of Appeals in *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 423 (6th Cir. 2000).

Civil contempt is remedial; it serves to compel or coerce obedience to a court order or to compensate a party for another's noncompliance with a court order. It is axiomatic that "all orders and judgments of courts must be complied with promptly." *Gnesys, Inc. v. Greene*, 437 F.3d 482, 493 (6th Cir. 2005). A finding of civil contempt "is considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity

to be heard. Neither a jury trial nor proof beyond a reasonable doubt is required." *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994) (footnote omitted). The party seeking a contempt order must establish three elements by clear and convincing evidence: (1) the alleged contemnor had knowledge of the order which he is said to have violated; (2) the alleged contemnor did in fact violate the order; and (3) the order violated must have been specific and definite. *See Glover v. Johnson*, 138 F.3d 229, 244 (6th Cir.1998).

Because the Chapter 13 Trustee had to engage in discovery and attend many status conferences, he has incurred attorney fees for both his time and his attorney's time in the amount of $7,400.00. The statement of services supplied to the Court by the Chapter 13 Trustee starts from the filing of the Concurrence and Appearance and includes the taking of the depositions of various Wildfire employees. Wildfire denies that the Chapter 13 Trustee is entitled to any attorney fees and costs either as a matter of fact or law. Wildfire's arguments are well based in that 11 U.S.C. § 362(k) is the only directly applicable statute. Section 362(k) only allows an individual to recover actual damages including costs and attorney fees, as well as when appropriate, punitive damages. Here, Wildfire reached an agreement with the Debtors and paid the Debtors' damages, including their attorney fees and costs. Read strictly and narrowly, that is all that Wildfire would be required to do. Wildfire's settlement agreement with the United States Trustee also supports its view. The Order was very specific that the rights of the Debtors to recover damages was protected, but there is no mention in the Order that the United States Trustee would receive any monies for his efforts in enforcing either Section 362(k) or the general provisions of the Bankruptcy Code. That being said, the Order is also silent as to whether that was even considered or requested by the United States Trustee. The Chapter 13 Trustee, however, believes otherwise.

In support of his position, the Chapter 13 Trustee directs the Court to Section 105 and the

9

argument that this Court should issue any order necessary or appropriate to carry out the provisions of Title 11.  While the Chapter 13 Trustee applauds the efforts and results obtained by the United States Trustee and the Debtors, he seeks his costs and fees for being part of this solution.  The Chapter 13 Trustee's position, however, runs afoul of the general statutory construction that specific provisions of a statute control over general provisions.  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012).  "'[I]t is a commonplace of statutory construction that the specific governs the general.'" *Id*. (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)).  This rule of statutory construction is commonly applied when a general grant of authority or prohibition in a statute is contrary to a specific grant or prohibition.  In these circumstances, "[t]o eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX*, 566 U.S. at 645.  Applied here, the specific provisions of Section 362(k) limit those who can recover damages for a violation of the automatic stay.  The Debtors, being individuals, are eligible; the Chapter 13 Trustee is not.  While the Chapter 13 Trustee cites a case, *Havelock v. Taxel (In re Pace)*, 67 F.3d 187 (9th Cir. 1995) for the proposition that a trustee can recover damages for contempt under Section 105(a), the Court concludes that case is factually distinguishable and not binding on this Court.

In *Pace*, the debtor and his former spouse attempted to conceal a malpractice claim from the Chapter 7 trustee, refused to relinquish the proceeds from the settlement of that claim, and attempted to take the proceeds in contradiction of the settlement agreement, all in violation of the automatic stay.  All of these antics caused the Chapter 7 trustee and his counsel to incur significant legal fees.  The *Pace* Court held that the Chapter 7 trustee was not an individual under Section 362, but that costs and attorney fees could be recovered under Section 105.

Applying *Pace* in this case is difficult because *Pace* was decided before *RadLAX* and did not

10

17-20394-dob    Doc 73    Filed 08/30/18    Entered 08/30/18 15:06:35    Page 10 of 12

acknowledge *Morales*, which are decisions binding on this Court. Moreover, the numerous egregious facts in *Pace* are not present in this case in that Wildfire cooperated with the United States Trustee, the Debtors, and the Chapter 13 Trustee, and has taken steps to stop further violations of the automatic stay. Also, the violations of the automatic stay that were identified by the United States Trustee were not subject to a request for fees and costs by the United States Trustee. Finally, the concerns of the Chapter 13 Trustee regarding improper influence by Wildfire on the Debtors was not substantiated.

Even if the Court could find that Section 362(k) does apply to the Chapter 13 Trustee or that costs and fees should be awarded under Section 105, the Court would not award all the amounts requested by the Chapter 13 Trustee. While the Court does find that the hourly rate requested by the Chapter 13 Trustee is reasonable under *Boddy v. U.S. Bankr. Court (In re Boddy)*, 950 F.2d 334 (6th Cir. 1991), a number of time entries cannot be allowed. The Chapter 13 Trustee seeks payment for many of his own services even though he had an attorney involved early on this case. After removing the Chapter 13 Trustee's services, however, there is still $5,775.00 of attorney time incurred by the Chapter 13 Trustee's attorney that could be compensable. Of those services, however, many hours appear to have been devoted to investigating the unsupported allegations of the Debtors that they were pressured to remove their car loan from their Chapter 13 Plan. For example, applying an easy bright-line test as measured by the January 26, 2018 Order Resolving United States Trustee's Differences with Wildfire Credit Union, all services after that date would appear to be related to the unsubstantiated allegations of the Debtors regarding statements made to them by Wildfire. The total of the services after January 26, 2018 is $2,950.00, which would leave only $2,785.00 that could be considered compensable for the Debit Visa Card issues.

But the Court concludes that Section 362(k) is more specific and governs this situation over

the general provisions of Section 105. Also, with these facts and because the United States Trustee acted in his capacity to enforce provisions of the Bankruptcy Code, the Court at this time is unable to award the Chapter 13 Trustee his attorney fees and costs incurred in this matter. In other circumstances where a specific court order is violated or other egregious acts exist, the Court reserves its rights under Section 105 to sanction the offending party. In this case, Wildfire is not such a party. The Court therefore denies the request of attorney fees and costs of the Chapter 13 Trustee.

The Court will enter an order contemporaneously with this Opinion.

**Signed on August 30, 2018**



/s/ Daniel S. Opperman
**Daniel S. Opperman**
**United States Bankruptcy Judge**